Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Special Counsel for Debtor

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In re<br><br>CECIWONG, INC.<br><br>    Debtor | Case No. 18-31385 HLB<br><br>Chapter 11 |

**DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**

*Dated February 1, 2019*

I.  **INTRODUCTION**

CeCiWong, Inc. (the "Debtor") has proposed this Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the "Debtor's Plan") for acceptance by its creditors.

The Debtor's Plan of Reorganization is premised upon the voluntary subordination of approximately $5 million of debt to specified undisputed non-insider creditors ("Approved Creditors"), which would result in their payment in full shortly after the Effective Date.

This Plan is intended promptly to wrap up the business affairs of a small company. In practical effect, all allowed and undisputed claims not held by insiders will be paid in cash, in full shortly after the effective date. If there are claims that are not held by Approved Creditors, they will receive payment only if they are ultimately allowed, net of offsets and counterclaims, and then only to the extent of 20%, or such greater amount as the Court determines necessary to provide them a ratable distribution of the value of the estate's assets. The general unsecured creditors who are Approved Creditors and those who are not or would not be Approved Creditors are specified in Part III of the Debtor's Plan.

Part II of the Debtor's Plan presents background information regarding the Debtor and the events that led to the filing of the bankruptcy petition and disclosures regarding the Debtor's Plan. Attached to the Debtor's Plan is an analysis of how much creditors would likely receive in a Chapter 7 liquidation.

Part III of the Debtor's Plan presents the monetary treatment of creditors, identifying each known creditor by name. Part IV contains other provisions governing the treatment of creditors under the Debtor's Plan, including provisions regarding the Debtor's discharge and creditors' remedies if the Debtor defaults in its obligations under the Debtor's Plan.

All creditors are entitled to vote on confirmation of the Debtor's Plan because they are in "impaired" classes. Completed ballots must be received by the Debtor's counsel, and objections to confirmation must be filed and served, no later than [date]. The Court will hold a hearing on confirmation of the Debtor's Plan on [date] at [time].

Whether the Debtor's Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Debtor's Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Debtor's Plan.

If the Debtor's Plan is confirmed, the payments promised in the Debtor's Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all new obligations under the Debtor's Plan. If Debtor defaults in performing Debtor's Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights.

## II. BACKGROUND AND DISCLOSURES

### A. *Events Leading to the Bankruptcy Filing*

The Debtor operated a retail jewelry business, originally located in a mall and subsequently relocated to a retail street in downtown Menlo Park, California.

The Debtor was 94% owned by Magne Stangenes, and subsequently his family trust, Magne T and Kari Stangenes Revocable Intervivos Trust (the "Trust"), and 6% owned by Cecilia Wong. Mr. Stangenes acted as a passive owner; day-to-day management and operations were conducted by Cecilia Wong and her family members (collectively, "Prior Management").

The Debtor's business was markedly unprofitable under Prior Management. Mr. Stangenes loaned more than $5 million to the Debtor to acquire inventory and to sustain operations.

In the summer and fall of 2018, concerns about the Debtor's lack of profitability led to the replacement of Prior Management with members of Mr. Stangenes's immediate family ("Current Management"). An investigation of Prior Management has been commenced and suggests that the Debtor may have claims against Prior Management, but that investigation has not concluded.

Under the control of Current Management, the Debtor retired substantially all outstanding, unpaid vendor claims.

### B. Current Status

The Debtor's assets consist principally of approximately $20,000 in cash, approximately $3 million of jewelry inventory (at wholesale purchase cost) and any claims or causes of action it may have against Prior Management.

Current Management has concluded that ongoing retail operations through a storefront and sales to the general public are unlikely to prove profitable. Current Management therefore intends to surrender the Debtor's leasehold as part of these proceedings. Thereafter, sales will either be conducted on a boutique, appointment-only basis or the inventory may be liquidated through one or more bulk sales.

The Debtor inquired of the wholesaler from whom it bought some of the inventory. That wholesaler advised that, in general, it was likely to be willing to pay 25% to 30% of purchase price to buy back the inventory in bulk. The higher percentage has been used to estimate a liquidation recovery in the Attachment. As a consequence, the Debtor believes that the net realizable value of the inventory will likely prove less than $1 million.

### C. The Intended Business Reorganization

The Debtor will cease retail business operations.

On the 10th day after the Effective Date, all creditors other than the Trust will receive their payment. All Approved Creditors, expected to consist of all creditors other than Prior Management (if any of its members file timely claims) and potentially the Landlord will be paid in cash, in full, but without interest. If an agreement is reached between the Debtor, the Landlord and the Trust, the agreed amount of the Landlord's claim will be treated as an Approved Creditor Claim. This treatment is made possible by the voluntary subordination of the Trust's claim to Approved Creditor Claims and potentially by additional cash advances from the Trust. Approved Creditor Claims are identified and treated in Class 1 of the Debtor's Plan. All Proofs of Claim which have been filed to date are Approved Creditor Claims.

Claims which are not Approved are treated in Class 2 of the Debtor's Plan. Those claims consist of any claims filed by Prior Management, the claim of the Landlord if no agreement is reached between the Debtor, the Landlord and the Trust, and any claims which are timely filed which the Debtor chooses to dispute. (Members of Prior Management have not filed claims, and Current Management is not aware of any claims not specifically identified below, but the Claims Bar Date will not run until April 22, 2019, and so the Debtor's Plan must address the treatment of claims of which it is not aware but which might hereafter be timely filed.)

The Debtor believes that the realizable liquidation value of its assets is less than $1 million. Class 2 claimants will receive a distribution on the Effective Date in cash of a dividend of 20% of the amount of their claims (the "Liquidation Dividend") or such other amount as the Court determines necessary to provide Class 2 claimants with at least as much as they would receive in a liquidation. See, Attachment. If there are claims which are disputed, the Debtor or the Trust will deposit such

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND
PLAN OF REORGANIZATION

2

Case: 18-31385    Doc# 21    Filed: 02/01/19    Entered: 02/01/19 10:00:06    Page 3 of 15

amount as the Court determines appropriate to ensure that the disputed claimant will receive the foregoing dividend in the event that its claim is Allowed.

### D. Risk Factors

If confirmed, the Debtor believes that the Debtor's Plan is highly likely to be performed. The principal risk factor which might thwart performance would be the filing of an unknown and presumably disputed claim in such a large amount that (a) the Debtor is unable to fund a reserve to pay a dividend if it is Allowed, or (b) it is ultimately Allowed in an amount materially in excess of any reserve established. The Debtor believes that the likelihood of either of these risk factors manifesting themselves is remote, but they potentially exist.

### E. Tax Consequences

It is the Debtor's best estimate that confirmation of the Debtor's Plan will generally be tax neutral for creditors and the Debtor.

From the perspective of the Debtor and of the creditor, the payments to be made under the Debtor's Plan will likely have precisely the same tax attributes and consequences as they would have had, if the claims had been timely paid in the absence of the bankruptcy case: if the payment by the Debtor otherwise would have been taxable income to the creditor, it will be taxable income when made under the Debtor's Plan.

There are two circumstances in which the tax consequences may differ. First, payments may be made or received in a different tax year as a result of the deferrals provided by the bankruptcy process, which may have an effect on certain taxpayers. Second, since creditors' claims are to be paid in full under the Debtor's Plan, there will likely be tax consequences to any creditors that have already taken a bad debt deduction with respect to any obligation of the Debtor.

Creditors are urged to obtain and rely upon the advice of their tax professionals, rather than the foregoing summary.

### F. Litigation Claims

The bankruptcy laws provide for various rights to avoid pre-bankruptcy transfers that harm creditors, principally as "preferences" or as "fraudulent transfers". The Debtor has reviewed and analyzed its pre-bankruptcy transactions with non-insider creditors and identified potentially avoidable transfers made within 90 days of the bankruptcy filing in response to Question 3 in the Statement of Financial Affairs which it filed with the Court. 15 such transfers were identified, in the aggregate amount of $276,803.89, of which only 3 exceeded $20,000. The Debtor believes that the net recovery were it to pursue avoidance of such claims as "preferences" is low. The Debtor does not intend to pursue such claims, principally because the holders of such claims would have been Approved Creditors under this Debtors Plan had they not been paid previously.

The Debtor believes that there may be material claims against Prior Management for insider preferences, for fraudulent transfers and for business torts unrelated to bankruptcy. The Debtor's investigation into these claims has not been completed. The Debtor's current intention is to pursue such claims only in response to the filing of Claims by Prior Management in this case.

Apart from the foregoing, the Debtor's current management is unaware of any claims or rights that could be pursued through litigation.

### G. *Liquidation and Sale Alternatives*

Typically, a disclosure statement includes an analysis of the results of a liquidation as an alternative. The Attachment presents an analysis of the results of a liquidation of the Debtor's assets by a Chapter 7 trustee. Since it appears that all creditors would recover materially less in a liquidation under Chapter 7, after suffering a material delay, conversion to Chapter 7 appears to be an unreasonable and unlikely alternative.

## III. TREATMENT OF CREDITORS

### Secured Creditors

The Debtor believes that it has no secured creditors. If there are any, they will be paid in full on the Effective Date or as soon thereafter as their claims are Allowed.

### Unsecured Creditors

**Administrative Claims**

**Treatment:** Post-bankruptcy debts will be paid in full on confirmation of the Debtor's Plan or when they come due.

**Claims:** Administrative claims are currently expected to consist of approximately $45,000 in attorney's fees owed to Debtor's counsel and less than $1,000 owed to the Office of the United States Trustee.

1. *Non-Classified Claims*. The non-classified Claims shall be treated as follows:

1.1.1. With respect to every claim and expense entitled to treatment under Section 503(b) of the Code, excepting only those Claims described in the following paragraph 1.1.2, to the extent, if any, that the holder of such a Claim has not heretofore been paid, then, on the Effective Date or as promptly thereafter as the Claim shall become an Allowed Claim, each holder of such a Claim shall receive from the Debtor cash equal to the Allowed amount of such Claim.

1.1.2. With respect to the Allowed Claim of the Office of the United States Trustee in respect of any demand for fees entitled to treatment pursuant to Section 1129(a)(12) of the Code, to the extent, if any, that such a Claim has become due prior to the Confirmation Date and has not heretofore been paid, then, on the Effective Date, the holder of such a Claim shall receive from the Debtor cash equal to the Allowed amount of such Claim. Any such claim relating to the period from the Confirmation Date until entry of the Final Decree shall be paid by the Estate promptly after it becomes due.

## Priority Creditors

**The Debtor believes that it has no creditors whose claims are entitled to priority under the Bankruptcy Code. If there are any, they will be paid in full on the Effective Date.**

## General Unsecured Creditors

**Class 1:** **Approved Creditors**

**Treatment:** Payment in full on the 10th day after the Effective Date, without interest.

**Allowance:** All of the Claims assigned to Class 1 as of the commencement of the case, including all of the Proofs of Claim filed as of the date of this Combined Plan, are as follows:

| Creditor | Amount Owed |
|---|---|
| | |
| T.S. Lin and Sons, Inc.. | $ 12,592.50 |
| American Express National Bank (Plum Card) | $ 1,707.99 |
| American Express National Bank (Simpli Cash) | $ 768.21 |

2. <u>Class 1</u>: The Class 1 Claims are Impaired.

1.2.1. In full and complete satisfaction, the holders of Allowed Class 1 Claims shall receive payment in full of the amount due and payable, without interest, on the 10th day after the Effective Date.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND
PLAN OF REORGANIZATION

Case: 18-31385    Doc# 21    Filed: 02/01/19    Entered: 02/01/19 10:00:06    Page 6 of 15

5

**Class 2:    Disputed Unsecured Claims**

**Treatment:    No payment until Claim is Allowed, net of all counter-claims. Payment in cash of 20% of the amount of the Claim or such other amount as the Court determines necessary to ensure that it exceeds what might be recovered in a liquidation under Chapter 7. Cash reserve to be set in an amount approved by the Court at the Confirmation Hearing or prior to the Effective Date. To date, no Proofs of Claim have been filed which are assigned to Class 2. The Claims assigned to Class 2 are: (a) any Claim of the Landlord; (b) any Claims hereafter filed by Prior Management (including, without limitation Cecilia Wong, Cecilia Lee and Donna Chan); and (c) such other claims that are filed after the date of this Debtor's Plan and prior to the Claims Bar Date unless the Debtor assigns the claim to Class 1 in writing. To date, no claims have been assigned to Class 2.**

    3.    <u>Class 2</u>:  The Class 2 Claims are Impaired.

    1.3.1.  All Proofs of Claim filed after January 30, 2019 shall be assigned to Class 2, although the Debtor may, with the consent of the Trust, transfer any such claim to Class 1.

    1.3.2.  No Class 2 Claim shall be paid until it is Allowed, no Class 2 Claim shall be Allowed in the absence of compliance with Section 502(d) of the Code, and with respect to all counter-claims and claims asserted by the estate not subject to Section 502(d), all such counterclaims and claims shall be offset against the Class 2 Claim and the Class 2 Claim shall be Allowed only in such net amount. No Class 2 Claim shall be Allowed for distribution until all of the foregoing litigation shall have been resolved by a final order or judgment.

    1.3.3.  In full and complete satisfaction, the holders of Allowed Class 2 Claims, if any, shall receive the Liquidation Dividend on the Effective Date of the Debtor's Plan.

**Class 3:    Trust's Claims**

**Treatment:    Subject to payment of all other claims as provided under the Debtor's Plan (or reservation of funds for such payment if disputed claims are ultimately allowed) the Trust may elect *either* to receive all of the Debtor's remaining assets in kind or to receive all of the stock in the Debtor.**

    4.    <u>Class 3</u>:  The Class 3 Claim is impaired.

    1.4.1.  In full and complete satisfaction of the Trust's Claim, it may elect prior to the Effective Date to receive:

1.4.1.1. Either all of the Estate's assets in kind (the "Asset Election"; or

1.4.1.2. All of the stock in the Reorganized Debtor (the "Stock Election").

1.4.1.3. In each case, the assets or the Reorganized Debtor shall be free and clear of any and all claims or rights.

**Class 6:** **Ownership Interests**

**Treatment:** Cecilia Wong's ownership interest is extinguished. The Trust's ownership interest is not affected by the Debtor's Plan.

    5. <u>Class 4</u>: The Class 4 Interests are impaired.

    1.5.1. In every case, Cecilia Wong's stock shall be cancelled. In every case, the Trust shall retain its stock.

    1.5.2. In the event that the Trust makes the Asset Election, the Interest retained by the Trust will have no economic value and the Trust will cause the Debtor to wind up its affairs and dissolve.

    1.5.3. In the event that the Trust makes the Stock Election, then, at the Trust's option, its old stock will be cancelled and new stock will be issued on account of the Trust's claim, or the Trust shall retain its old stock and cancel only Cecilia Wong's stock in satisfaction of its Class 3 Claim.

**Executory Contracts:** **Every executory contract and unexpired lease shall be rejected** by confirmation of the Debtor's Plan. No claims arising out of such rejection shall be Allowed unless the counterparties to such contracts have filed Proofs of Claim with the Court within the 30 days following the earlier of the rejection date or the Confirmation Date. Any such claim shall be assigned to Class 2 under the Debtor's Plan.

**IV.** **OTHER PROVISIONS GOVERNING THE TREATMENT OF CREDITORS**

    4.2. The following definitions apply in this Debtor's Plan:

4.2.1. "Allowed Claim" means a Claim against the Debtor (a) proof of which was timely filed with the Bankruptcy Court and as to which no objection has been filed; (b) which was listed in Debtor's Schedules of Assets and Liabilities filed herein and (i) not shown as disputed, contingent or unliquidated and (ii) as to which no objection has been filed; or (c) which has been Allowed by a Final Order of the Bankruptcy Court.

4.2.2. "Confirmation Date" means the date on which the Order of Confirmation is entered.

4.2.3. "Debtor" means CeCiWong, Inc.

4.2.4. "Effective Date" means a date selected by the Debtor which is not later than 30 days after the latter of (a) the Claims Bar Date, or (b) the date the Order of Confirmation becomes a final order, provided that the finality requirement may be waived by the Debtor.

4.2.5. "Liquidation Dividend" shall mean 20% or such greater percentage as the Court shall determine is necessary to assure Class 2 creditors of receiving a recovery at least equivalent to the recovery they would receive in a Chapter 7 liquidation.

4.2.6. Single-spaced provisions of the Debtor's Plan are merely explanatory and illustrative; the Debtor shall be bound only by the double-spaced provisions of the Debtor's Plan, except where doing so would be manifestly unjust.

4.2.7. A term used in the Debtor's Plan, whether or not capitalized, that is not defined in the Debtor's Plan but that is used in the Code has the meaning assigned to the term in the Code. If a term is not defined in the Debtor's Plan or the Code, it shall be given the meaning ordinarily ascribed to it in bankruptcy or insolvency law.

4.3. *Means of Execution*:

4.3.1. At or before the Confirmation Hearing, the Reorganized Debtor shall demonstrate to the Court's satisfaction its ability to fund the Plan.

4.3.2. From and after the Confirmation Date:

4.3.2.1. Any amounts to be paid under this Debtor's Plan shall be paid by the Reorganized Debtor. The Trust may advance funds to the Debtor to enable it to fund all Plan expenses.

4.3.2.2. No distribution shall be made on account of any Claim unless and until it is determined to be an Allowed Claim by the Debtor, the Reorganized Debtor or a final Order of the Court.

4.3.2.3. From and after the Confirmation Date, only the Reorganized Debtor may prosecute objections to claims.

4.3.2.4. All funds which are undisbursed or are returned and have not been claimed by the 240th day after the Effective Date, e.g., because the recipient of the funds could not be located or because the recipient refused to accept the funds, and any other excess and undistributable cash, including *de minimis* distributions, shall be retained by the Reorganized Debtor free of creditor claims.

4.3.3. From and after the Effective Date, the Reorganized Debtor may move the Court for such Orders as it deems advisable or beneficial to creditors or for the implementation of this Debtor's Plan.

4.3.3.1. Professionals employed by the Reorganized Debtor may be paid in the ordinary course and need not submit fee applications with respect to services performed after the Confirmation Date.

4.3.3.2. Notwithstanding anything to the contrary, on and after the Effective Date, all of the property of the Estate, including without limitation the Property and all causes of action, shall revest in the Reorganized Debtor, free and clear of all claims, liens and interests except as specifically provided herein. Every claim arising out of or related to Prior Management and its connection with the Debtor, its business or the bankruptcy case (including claims against its officers, directors, affiliates and owners) shall be preserved and retained by the Reorganized Debtor under this Debtor's Plan.

4.3.4. *Grace Period:* Any payment to be made under the Debtor's Plan shall be deemed timely made if it is mailed to the recipient's last known address within the 10 calendar days following the date described in this Debtor's Plan.

4.3.5. *Pre-Payment*: Notwithstanding anything whatsoever to the contrary, the Reorganized Debtor may pre-pay all or any portion of any debt subject to treatment under Class 1 or 2 of this Debtor's Plan at any time in its unfettered discretion.

6.1. *Effect of Confirmation*. On the Confirmation Date, the provisions of this Debtor's Plan shall be binding on the Reorganized Debtor, the Estate, all holders of Claims against or Interests in the Reorganized Debtor, and all other Persons whether or not such Persons have accepted this Debtor's Plan. Except as provided otherwise in this Debtor's Plan, from and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate. Confirmation of the Plan shall be deemed to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

4.3.6. *Integration*. The provisions of this Debtor's Plan and the Order of Confirmation supersede any and all prior agreements, documents, understandings, written or otherwise, in respect of any Claim against the Reorganized Debtor, and the treatment or satisfaction thereof. All such prior agreements, documents or understandings are merged herein, and no person may thereafter pursue or prosecute any Claim or demand arising out of or pertaining to such superseded agreements, documents or understandings.

4.3.7. *Section Headings*. The section headings contained in the Debtor's Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Debtor's Plan.

*4.4. Discharge and Injunction*

4.4.1. *Discharge of Claims and Termination of Interests*. Except as otherwise provided in the Debtor's Plan or the Order of Confirmation and to the maximum extent permitted by the Bankruptcy Code and any other applicable law: (i) on the Effective Date, the Reorganized Debtor shall be deemed discharged and released from all Claims and Interests, including without limitation demands, liabilities, Claims and Interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (A) a proof of Claim or proof of Interest based on such debt or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim or Interest based on such debt

or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, (C) the holder of a Claim or Interest based on such debt or Interest has accepted the Debtor's Plan, or (D) such Claim is listed in the Reorganized Debtor's schedules of assets and liabilities; and all Persons (including without limitation governmental entities) shall be precluded from asserting against the Reorganized Debtor, its successors, or its assets any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. Except as otherwise provided in the Debtor's Plan or the Order of Confirmation, upon the occurrence of the Effective Date, the Order of Confirmation shall act as a discharge of any and all Claims against and all debts and liabilities of the Reorganized Debtor, as provided in sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against the Reorganized Debtor at any time obtained to the extent that it relates to a Discharged Claim.

4.4.2. *Injunction*. The Order of Confirmation will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims discharged or modified pursuant to the Debtor's Plan.

4.4.3. *Plan Only Recovery*. For the avoidance of doubt, no Person whose Claim is treated under this Debtor's Plan shall enjoy any right to any recovery on that Claim except through a distribution under this Debtor's Plan, if at all.

4.5. *Chapter 11 Post-Confirmation Reports and Final Decree.*

4.5.1. Post-confirmation Reports. Not later than 90 days after entry of the Confirmation Order and quarterly thereafter, the Reorganized Debtor shall file a quarterly post-confirmation status report, the purpose of which is to explain the progress made toward substantial consummation of the confirmed Debtor's Plan. The quarterly reports shall be filed no later than 30 days following the end of the applicable calendar quarter. The report shall include a statement of receipts and disbursements, with the ending cash balance, ending on the last day of a quarter. The report shall also include information sufficiently comprehensive to enable the Court to determine: (1) whether the order confirming the Debtor's Plan has become final; (2) whether deposits, if any, required by the Debtor's Plan have been distributed; (3) whether any property

proposed by the Debtor's Plan to be transferred has been transferred; (4) whether the Reorganized Debtor under the Debtor's Plan has assumed the business or the management of the property dealt with by the Debtor's Plan; (5) whether payments under the Debtor's Plan have commenced; (6) whether accrued fees due to the United States Trustee under 28 U.S.C. § 1930(a)(6) have been paid; and (7) whether all motions, contested matters and adversary proceedings have been finally resolved. Further quarterly reports must be filed every 90 days thereafter until entry of a final decree, unless otherwise ordered by the Court.

4.5.2. Post-Confirmation United States Trustee Quarterly Fees. A quarterly fee shall be paid by the Reorganized Debtor to the United States Trustee, for deposit into the Treasury, for each quarter (including any fraction thereof) until this case is converted, dismissed, or closed pursuant to a final decree, as required by 28 U.S.C. § 1930(a)(6).

4.5.3. Service of Reports. Notice of the Reports and of any other matter arising after the Confirmation Date shall be sufficient if served by mail, no later than the day upon which it is filed with the Court, upon the United States Trustee and such other persons or entities as may request special notice in a writing filed with the Court on or after the Confirmation Date.

4.6. The Bankruptcy Court shall retain and have jurisdiction over the bankruptcy case for all purposes provided by the Code, including, without limitation, for the following purposes:

4.6.1. To determine any and all objections to the allowance of Claims, and all counter-claims asserted against any holder of a Claim, and to allow, disallow, estimate, liquidate or determine any Claim;

4.6.2. To grant full and complete relief upon the request of the Reorganized Debtor;

4.6.3. To determine compliance with the provisions of the Debtor's Plan;

4.6.4. To determine any and all motions for compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Debtor's Plan which accrued on or prior to the Confirmation Date;

4.6.5. To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date, except as provided in the

Confirmation Order, or which shall be commenced on or after the Effective Date and be properly before the Bankruptcy Court;

    4.6.6. To consider any modifications of the Debtor's Plan, any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Order of Confirmation, to the extent authorized by the Code; and

    4.6.7. To implement the provisions of the Debtor's Plan and to issue orders in aid of execution of the Debtor's Plan to the extent authorized by Section 1142 of the Code.

**V.    CONFIRMATION REQUEST**

If necessary, the Debtor requests Confirmation of the Debtor's Plan pursuant to Section 1129(b) of the Code.

DATED:    February 1, 2019    CECIWONG, INC.

By:  /s/  *Lill Runge*  .
    Lill Runge
    Responsible Individual

Presented by:

ST. JAMES LAW, P.C.

By:  /s/  *Michael St. James*  .
    Michael St. James
Special Counsel for the Debtor

# ATTACHMENT

# ESTIMATED RESULTS OF LIQUIDATION

The Debtor's principal asset is a jewelry inventory carried on its books at a purchase price of $3 million. The Debtor has inquired of the wholesale vendor from whom it purchased some of the inventory, and has been advised that it would likely be wiling to repurchase the inventory at about 25% to 30% of the Debtor's purchase price. The higher estimate was used for this liquidation analysis.:

The Debtor believes that the likely distribution were the case administered by a trustee in a Chapter 7 liquidation can be estimated as follows:

| | | |
|---|---|---:|
| Cash | $ | 20,000 |
| Estimated net proceeds of inventory | $ | 900,000 |
| Estimated net preference recoveries | $ | 40,000 |
| | | |
| Aggregate liquidation proceeds | $ | 960,000 |
| | | |
| Trustee Fees | $ | (51,250) |
| Estimated fees and costs of Trustee's professionals | $ | (30,000) |
| Estimated Chapter 11 fees | $ | (30,000) |
| | | |
| Net available for unsecured creditors | $ | 848,750 |
| | | |
| Percentage dividend in Chapter 7 Liquidation | | 15% |